(35 Misc. Rep. 465.)

GALE et al. v. CITY OF SYRACUSE et al.

(Supreme Court, Special Term, Onondaga County. July, 1901.)

1. POLLUTION OF STREAM—SEWERS—INJUNCTION.

The channel of a creek was changed by a city so that it ran to a neighboring lake. The city proposed to build an additional sewer connecting with the creek, and emptying near the land abutting· on the lake, and thereby increasing the pollution of the creek and lake. *Held*, that such act will be restrained, where it appeared that the land was flooded at the time of the spring floods, and large sewage deposits made, which became extremely offensive when the waters receded.

2. SAME—ESTOPPEL.

That abutting owners on a stream have not objected to the use of the stream as a sewer does not estop them from objecting where the city proposes to increase such sewer.

Action by Thomas K. Gale and others against the city of Syracuse and others to restrain defendants from obstructing a sewer and discharging the same into Onondaga creek on a certain avenue in the city. Injunction granted.

Lewis & Crowley, for plaintiffs.

W. J. McClusky, for defendants.

ANDREWS, J. Originally the waters of Onondaga creek ran in a winding channel to the lake, through a course considerably to the north of their present location. About 1867, however, the city of Syracuse acquired, under legislative authority, a strip of land some 160 feet wide, beginning at a point on the stream known as "Maple Elbow," and running northwesterly in a straight line to the shore of the lake. A channel was dug through this strip, and when completed the waters of the stream were turned into it. In the year 1883 the plaintiffs' ancestor obtained title to reclaimed lot No. 45 of the Onondaga Salt Springs reservation, excepting and reserving the land taken therefrom for the New York Central Railroad Company and the land taken to straighten Onondaga creek. This reclaimed lot lay upon both sides of the new channel. It was bounded northerly by the lake, and extended southeasterly towards Hiawatha avenue. It did not, apparently, touch the waters of the creek itself, except at one point, where, as shown by a map offered by the defendants in evidence, a portion of the creek does, for a few feet, flow over the plaintiffs' land. In 1884 the plaintiffs' ancestor obtained a second parcel of land lying between the first and Hiawatha avenue, and bounded on the side towards the new channel of the creek by the land appropriated by the city. This parcel at no point touches the water. It appears satisfactorily from the evidence that at the present time Onondaga creek is largely used to carry away the sewage of the city, that it and the lake near its mouth are greatly contaminated thereby, that in the springtime the lands owned by the plaintiffs are usually overflowed, that as the waters recede large deposits of this sewage are left thereon, and that later in the season this deposit becomes extremely offensive. It also appears that the city is about to construct an additional sewer through Hiawatha avenue, opening into the creek on that

street at a point close to the plaintiffs' property. This sewer is to drain a large part of the First and Second wards of the city, and, if constructed, will throw into the stream great quantities of sewage. The inevitable result will be greatly to increase the present pollution of the stream, to pollute the lake where it washes the plaintiffs' property, and to increase the deposits left upon this property by the spring floods. This is especially so as it is not claimed that the plans for such sewer contemplate any means for protecting the plaintiffs' lands, even if such means could be adopted. Under these circumstances, I am of the opinion that the plaintiffs are clearly entitled to an injunction. As to a portion of their property they are, as has been seen, riparian owners upon the stream. It flows over their boundary line, and they are clearly entitled to prevent its pollution. The fact that they have acquiesced in what has already been done is no answer to this claim. Nor is the fact that the injury done it will be slight. They may object to acts which by the course of time will ripen into a right. Townsend v. Bell, 62 Hun, 306, 17 N. Y. Supp. 210; Knitting Co. v. Dean, 162 N. Y. 278, 56 N. E. 757. Nor is the fact that the present bed of the stream is artificial material. It is a natural stream, and it must be governed by the rules applicable in such cases. City of Reading v. Althouse, 93 Pa. 400; Weatherby v. Meiklejohn (Wis.) 20 N. W. 374; Paper Co. v. State, 15 App. Div. 169, 44 N. Y. Supp. 281. It also appears that the plaintiffs are riparian owners upon the lake shore. They have a right, as such owners, to object to the further pollution of the lake water,—a result which, under the evidence, will necessarily follow upon the completion of the sewer in question. Further than all this, it is shown that the plaintiffs' lands are subjected to substantially annual floods. For this no one is responsible. The fact that the waters so covering the land already contain refuse appears, but of this fact no complaint is made. The plaintiffs, however, may certainly object to any increase in the injury so done. The defendants have no right directly or indirectly to cast their sewage upon the property in question. Proper findings may be prepared, and, if not agreed upon, will be settled upon due notice.

Ordered accordingly.